# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| OLGA DUNINA, | Case No. 3:07-cv-014 |
| Plaintiff, | |
| v. | Chief Magistrate Judge: Michael R. Merz |
| CIRRUS CONCEPT CONSULTING, INC. | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

## MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Cirrus Concept Consulting, Inc. ("Cirrus") moves for summary judgment against Plaintiff Olga Dunina ("Plaintiff") as to all claims in this matter. The reasons supporting this Motion are set forth in the Memorandum below.

Respectfully submitted,

/s/ Stephen A. Watring
Stephen A. Watring (0007761)
DUNLEVEY, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402-1738
(937) 223-6003
(937) 223-8550 - fax
saw@dmfdayton.com
Trial Attorney for Defendant

**MEMORANDUM**

I. **STATEMENT OF THE CASE**

The Amended Complaint in this matter was filed on February 7, 2007. Cirrus served Plaintiff with its First Request for Admissions on June 4, 2007 via electronic and ordinary U.S. mail.[1] As of the date of the filing of this Motion, Plaintiff has not responded to such Request for Admissions. Therefore, they are deemed admitted by operation of law under Federal Civil Rule 36. Based upon the Amended Complaint, these Admissions, and the Affidavit of Leslie Kahn filed contemporaneously with this Motion as Exhibit 3, Defendant is entitled to summary judgment.

II. **STATEMENT OF FACTS**

A. **Plaintiff's Prior Employment History and Record of Morphine Theft**

Prior to November, 2002, Plaintiff worked as a Registered Nurse for various resource agencies, which sent her to different hospitals to work (Request for Admissions No. 2). On November 16, 2002, Plaintiff was working at Sycamore Hospital of Kettering Medical Network as a result of a referral from Maxim Nursing Agency to Life Care Hospitals of Dayton (Request for Admissions No. 3). On that date, Life Care employees became aware that narcotics had been taken from the facility without permission during Plaintiff's shift (Request for Admissions No. 1 and Ex. A at pg. 2). After investigating, Life Care contacted Maxim and requested that Plaintiff no longer be sent to work for Life Care (Request for Admissions No. 1 and Ex. A at pg. 2). Ultimately, Plaintiff was fired for stealing morphine from Life Care (Request for Admissions No. 4). The Ohio State Board of Pharmacy also investigated the morphine theft. In its Report, it found that Plaintiff was the last person to access the morphine before some was found to be

---

[1] Defendant's First Request for Admissions has been filed as Exhibit 1. Also see the Affidavit of Stephen A. Watring, which has been filed as Exhibit 2.

missing, that Plaintiff's "Med Dispense" report raised several questions, and that Plaintiff's behavior and responses were deceptive when she was interviewed (Request for Admissions No. 12 and Ex. C). As a result of being accused of and fired for stealing morphine, Plaintiff was damaged professionally (Request for Admissions No. 5; Exhibit A). Since that time, she has had difficulty finding employment at any hospital in the Dayton, Ohio area (Request for Admissions Nos. 5 and 6). In November, 2004 Plaintiff filed suit against Life Care Hospitals, Kettering Medical Network, Maxim, the Ohio State Board of Pharmacy and numerous individuals concerning the morphine theft incident (See Request for Admissions No. 1 and Ex. A). Such claims ultimately were dismissed (Request for Admissions No. 11 and Ex. B). Although the morphine theft incident occurred prior to Plaintiff seeking employment through Cirrus, this background is important to understand the events which followed.

### B. Plaintiff Seeks Employment Through Cirrus

Cirrus is a professional employer organization ("PEO") which specializes in providing staffing to the health care industry in the Dayton, Ohio area. Its primary client base consists of Dayton area hospitals and their affiliates. Cirrus recruits candidates for placement with these clients. (Kahn Aff. Para. 2)

Cirrus and its affiliate provide clients various staffing alternatives including permanent placement, temporary placement, temp-to-hire placement, and contract placement through employee leasing. As a PEO, Cirrus does not operate any medical facilities, but only provides staffing services. (Kahn Aff. Para. 3)

Regardless of the type of placement, all placements are subject to client approval. A client has discretion to reject a candidate, and is not required to give Cirrus a reason. Cirrus is in a highly competitive business. Cirrus cannot require or force any client to accept a referral from

Cirrus or provide that candidate a job. Cirrus never has sent a candidate to work for a client against the client's wishes. Clients often work with more than one PEO to meet their staffing needs. A client can seek referrals from competitors of Cirrus if it is not satisfied with the candidates referred by Cirrus (Kahn Aff. Para. 4).

Plaintiff first sought employment through Cirrus as a registered nurse in late 2005 (Complaint, Para. 1; Kahn Aff. Para. 5), approximately three years after the morphine theft incident. In the resume that she provided to Cirrus, Plaintiff did not list her employment with Maxim, Life Care, Sycamore, or Kettering Medical Network (Request for Admissions No. 7), and did not disclose her record of morphine theft to Cirrus (Kahn Aff. Para 9). Kettering Medical Network, which includes Kettering Medical Center, Grandview Hospital, Southview Hospital, and Sycamore Medical Center, is one of Cirrus' primary clients (Request for Admissions Nos. 9 and 10). As a result of previously being fired for stealing morphine at a Kettering Medical Network facility, Plaintiff is on the Do Not Return list at all hospitals in the Kettering Medical Network (Request for Admissions No. 8; also see Request for Admissions No. 14 and Ex. E).

Despite reservations about Plaintiff because of her attitude and demeanor, Cirrus attempted to place her with its clients just as it does other candidates (Kahn Aff. Para. 5). Cirrus did not make any less effort on behalf of Plaintiff than it did for other nurse candidates (Kahn Aff. Para. 5). Cirrus' efforts to place Plaintiff with its clients were unsuccessful, and Cirrus told Plaintiff that it was unsuccessful in those attempts (Request for Admissions Nos. 20 and 23; Complaint, Para. 2; Kahn Aff. Para. 5).[2] As a result, Cirrus advised Plaintiff that it did not have

---

[2] In her Amended Complaint, Plaintiff contends that Cirrus interviewed her but did not send her to work (Complaint, Para. 2). In her discrimination charge, Plaintiff claimed that Cirrus had hired her (Request for Admissions No. 13 and Ex. D). Plaintiff also contradicts herself as to whether these events occurred "prior to October, 2005" (Complaint, Para. 2) or "in November 2005" (Request for Admissions No. 13 and Ex. D). While these inconsistencies establish that plaintiff is a poor historian, these factual discrepancies are not material for purposes of this Motion.

- 4 -

a position for her (Kahn Aff. Para. 5). Plaintiff has no evidence that Defendant did not attempt to place her with its clients, or that it was in fact successful in placing her with its clients (Request for Admissions Nos. 21 and 22). Cirrus would have placed Plaintiff if it had been successful in placing her with its clients, and Plaintiff has no evidence to the contrary (Request for Admissions Nos. 24 and 25; Kahn Aff. Para. 5). Cirrus' failure to place Plaintiff with one of its clients had nothing to do with her national origin or age, and was not in retaliation for any actions that might have been taken by Plaintiff. The only reason that Cirrus did not place Plaintiff was because it was not able to successfully refer her to any of its clients (Kahn Aff. Para. 6).

The only legal claims that Plaintiff is making against Cirrus are claims under Title VII of the Civil Rights Act of 1964 for national origin discrimination, age discrimination, and retaliation (Request for Admissions No. 16). The only facts that Plaintiff has supporting her claim that she was discriminated against because of her national origin is that she is a Russian immigrant, and Cirrus did not successfully refer her for placement as a registered nurse at one of its hospital clients (Request for Admissions No. 17). Furthermore, the only facts that Plaintiff has supporting her claim that she was discriminated against because of her age is that she is over 40 years of age, and Cirrus did not successfully refer her for placement as a registered nurse at one of its hospital clients (Request for Admissions No. 18). Finally, the only facts that Plaintiff has supporting her claim of retaliation is that she is a Russian immigrant over 40, and Cirrus continued to fail to refer her to its client hospitals after Plaintiff filed her charge of discrimination (Request for Admissions No. 19). For the reasons stated herein, and based upon these facts, Cirrus is entitled to summary judgment.

**III.  ARGUMENT**

    **A.  Preliminary Statement**

The impetus behind this case and Plaintiff's allegations has nothing to do with Cirrus. Plaintiff was fired from a previous employer for stealing morphine (Request for Admissions No. 4). The State Pharmacy Board found that Plaintiff was the last nurse to have access to the morphine before some was discovered missing, and that Plaintiff was deceptive during the course of its investigation (Request for Admissions No. 12; Ex. C). As a result of Plaintiff's record of morphine theft, she is on the Do Not Return list for numerous hospitals belonging to the Kettering Medical Network (Request for Admissions Nos. 8 and 14; Ex. E; Kahn Aff. Para. 7). It should come as a surprise to no one that this incident has been an impediment to Plaintiff procuring employment as a nurse (Request for Admissions No. 5 and 6), and that Cirrus would be unsuccessful in placing Plaintiff is such a position (Request for Admissions Nos. 20 and 23; Complaint Para. 2; Kahn Aff. Para. 10). Cirrus believes that this Court should assume for purposes of summary judgment that Plaintiff was wrongfully accused of stealing the morphine. That assumption inevitably leads to the conclusion that Plaintiff has been the victim of a travesty of justice and has suffered personally and professionally as a result. This is truly regrettable.

It is equally true, however, that Cirrus is not responsible for that travesty of justice. By the time that Plaintiff applied to Cirrus, her reputation already had been irreparably damaged by past events (Request for Admissions No. 5; Ex. A). Even if Cirrus had known of Plaintiff's record of morphine theft, Cirrus has neither the power nor the legal obligation to force its clients to disregard Plaintiff's record of morphine theft, give Plaintiff a second chance, and hire her notwithstanding that record (Kahn Aff. Para. 4). In a perfect world, perhaps someone would

give Plaintiff that opportunity[3], just as a convicted felon might be deserving of a second chance. It would not be a perfect world, however, for the law to force Cirrus or one of its client hospitals to disregard Plaintiff's morphine theft record and put themselves and patients at greater risk in the process. Plaintiff's view of freedom and justice is that Cirrus and everyone else should somehow be forced to disregard her record and give her a job just because she professes to have been unjustly accused in the past. Such a skewed view is much closer to what one might expect from Plaintiff's homeland. Cirrus had nothing to do with plaintiff's record of morphine theft. Cirrus cannot help it if its clients do not want Plaintiff working for them. Plaintiff has no evidence that Cirrus has engaged in illegal discrimination. Cirrus is entitled to summary judgment.

      **B.     Plaintiff cannot present a prima face case.**

Plaintiff has no evidence of discrimination other than the fact that she enjoys protected class status and that Cirrus did not successfully place her in a position with one of its clients (Request for Admissions Nos. 17, 18 and 19). Therefore, to prove a prima facie case in the absence of direct evidence of discrimination, Plaintiff must prove all four elements established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny. It seems self-evident that a nurse with a record of on-the-job morphine theft is not qualified for a hospital nursing position (Kahn Aff. Para. 10). Therefore, Plaintiff cannot meet the third element of a

---

[3] Obviously, Plaintiff is doing herself no favors by concealing the morphine theft incident from prospective employers (Kahn Aff. Para. 9), and by suing everyone in sight (Dunina v. Life Care Hospitals of Dayton Inc, Case No. 3:06-cv-00399-WHR-MRM (S.D. Ohio); Dunina v. Select Specialty Hospitals, Case No. 1:06-cv-00617-HJW-TSB (S.D. Ohio); Dunina v. Miami County Common Pleas Court Visiting Judge Jonathan Hein, Case No. 3:06-cv-00383-TMR-SLO (S.D. Ohio); Dunina v. Kindred Hospital Dayton, Case No. 3:07-cv-00015-TMR-MRM (S.D. Ohio); Dunina v. Rehabilitation Institute of Dayton, Case No. 3:07-cv-00117-WHR-MRM (S.D. Ohio); Dunina v. Life Care Hospitals of Dayton, 2004-cv-08033 (Montgomery County Court of Common Pleas); Dunina v. Stemple, 2006-cv-04209 (Montgomery County Court of Common Pleas))

prima facie case.[4] Moreover, Plaintiff cannot show either that Cirrus successfully placed other nurses at its clients over the clients' objections (Kahn Aff. Para. 4), or that Cirrus had ever placed any nurse with a record of morphine theft (Kahn Aff. Para. 10). Thus, Plaintiff cannot show that she "was treated differently than similarly-situated, non-protected applicants" *Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006), 98 FEP Cases 833, 837-839 (6th Cir. 2006). As a result, Plaintiff fails to satisfy the fourth element of a prima facie case as well. Because Plaintiff does not meet either the third or the fourth criteria for a prima facie case, Cirrus is entitled to summary judgment.

**C. Even if Plaintiff could have presented a prima face case, she cannot meet her burden of presenting evidence that Cirrus' reasons for not referring her were pretextual.**

Even if Plaintiff could have established a prima facie case, Cirrus easily has met its burden of coming forward with evidence of a legitimate non-discriminatory reason for not referring Plaintiff to its clients. While Cirrus attempted to place Plaintiff with its clients, none of its clients accepted Plaintiff (Request for Admissions No. 23; Kahn Aff. Para. 5). Thus, Cirrus simply was unable to effectuate the referral desired by Plaintiff. Plaintiff has no basis for challenging the genuineness of Cirrus' reasons. Furthermore, in light of Plaintiff's record of morphine theft, it is perfectly credible that Cirrus would be unsuccessful in placing Plaintiff (Kahn Aff. Para. 10).

The Fifth Circuit recently was faced with a similar set of facts in *Okoye v. Univ. of Texas Houston Health Center*, 245 F.3d 507 (5th Cir. 2001). In *Okoye*, the plaintiff, a Nigerian native, was employed at a jail under a contract between the defendant health center and the sheriff's

---

[4] It makes no difference that Cirrus was not aware of this disqualifying consideration at the time, especially because at least some of its clients placed Plaintiff on the Do Not Return list, which in turn disqualified her from placement by Cirrus.

department. The sheriff's department exercised its legal ability to bar the plaintiff from the jail after she was accused of assaulting a jail employee. The health center then terminated plaintiff's employment because it had nowhere else to place her. The Fifth Circuit upheld summary judgment against the plaintiff. The Court reasoned that the health center had a clear business reason for terminating the plaintiff because its client, the sheriff's department, had barred her from the jail. The health center lacked the discretion to return the plaintiff to that position.

The same rationale is directly applicable here. Cirrus attempted to place Plaintiff with its clients (Kahn. Aff. Para. 5). Its clients, not Cirrus, rejected Plaintiff. Like in *Okoye*, Cirrus lacked the ability to force its clients to accept Plaintiff (Kahn. Aff. Para 4). Like the defendant in *Okoye*, there was nothing Cirrus could do. This is by definition a non-discriminatory reason justifying Cirrus' actions. As long as this is the true reason that Cirrus did not refer Plaintiff to one of its clients, it does not matter if the clients were motivated by the morphine theft incident or some other reasons. To establish pretext, Plaintiff would have to show "that the legitimate reasons offered by the Defendant *were not its true reasons . . .*" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,143 (2000) (emphasis added); *Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998). Because Plaintiff has no such evidence, Cirrus is entitled to summary judgment as a matter of law.

Likewise, Cirrus has never had any reason to believe that its clients rejected Plaintiff for improper retaliatory or discriminatory motives (Kahn Aff. Para. 8). Therefore, Cirrus cannot be held liable either as an employer or as an employment agency even if its clients' motives are in question. *Williams v. Grimes Aerospace Co.*, 988 F.Supp. 925 (D.S.C 1997)

Thus, even if Plaintiff could somehow prove that Cirrus' clients actually had discriminatory motives instead of a concern over Plaintiff's morphine theft record, Cirrus still would be entitled to summary judgment. Cirrus' Motion for Summary Judgment should be granted.

### IV. CONCLUSION

Cirrus is not unsympathetic to Plaintiff's dilemma if she was wrongfully accused of morphine theft, and has encountered barriers in procuring employment as a nurse as a result. Nonetheless, Cirrus simply took Plaintiff as it found her, and unsuccessfully attempted to refer her to its clients. Plaintiff cannot present a prima face case against Cirrus, and cannot show that Cirrus' reasons for not referring her were pretextual. Accordingly, Cirrus is entitled to summary judgment.

For the reasons stated herein, Defendant's Motion for Summary Judgment should be granted in its entirety.

Respectfully submitted,

/s/ Stephen A. Watring_____
Stephen A. Watring (0007761)
DUNLEVEY, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402-1738
(937) 223-6003
(937) 223-8550 - fax
saw@dmfdayton.com
Trial Attorney for Defendant

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served via certified and ordinary U.S. mail upon:

Olga V. Dunina
10661 North Montgomery County Line Road
Brookville, Ohio 45309

on this date of filing.

/s/ Stephen A Watring_____
Stephen A. Watring (0007761)