FILED

# Montgomery County Court of Common Pleas

04 NOV 16 PM 3:15

## Civil Division

CLERK OF COURTS
MONTGOMERY CO. OHIO

Olga Dunina

10661 N. Montgomery County Line Rd.
Brookville, OH 45309
Plaintiff,

Case No: 04-8033
Judge:

VS

Life Care Hospital of Dayton
2150 Leiter Road
Miamisburg, Ohio 45342

And

Elizabeth Carico
summarily and individually
Life Care Hospitals of Dayton
2150 Leiter Road
Miamisburg, Ohio, 45342

And

Briana Brown
summarily and individually.
Life Care Hospitals of Dayton
2150 Leiter Road
Miamisburg, Ohio, 45342

And

COMPLAINT FOR DAMAGES
AND JURY DEMAND

Carolyn Kendell
summarily and individually

EXHIBIT
A

Life Care Hospitals of Dayton
2150 Leiter Road
Miamisburg, Ohio, 45342

And

Bill Urshell
Summarily amd individually
Life Care Hospitals of Dayton
2150 Leiter Road
Miamisburg, Ohio, 45342

And

Ken D'Omico
Summarily and individually
Life Care Hospital of Dayton
2150 Leiter Road
Miamisburg, Ohio 45342

And

Pam Hollinger
Summarily and individually
Life Care Hospitals of Dayton
2150 Leiter Road
Miamisburg, Ohio, 45342

And

"MAXIM" nursing agency
Summarily and individually
3055 Kettering Blvd.
Moraine, Ohio, 45439

And

Aaron Zofkie

Summarily and individually
3055 Kettering Blvd.
Moraine, Ohio, 45439

And

Kettering Medical Network
3535 Southern Blvd
Kettering, Ohio, 45429

And

Bob Burdick
Summarily and individually.
Ohio State Board of Pharmacy
77 South High Street, 17th Floor,
Columbus, Ohio 43266-0320

And

Ohio State Board of Pharmacy
Summarily and individually.
77 South High Street, 17th Floor
Columbus, Ohio 43266-0320

And

John Rion
Summarily and individually
One First National Plaza, Suite 2150
Post Office 1262
Dayton, Ohio 45402

And

Richard Schulte
Botros, Kollin and Schulte, LLC
Summarily and individually
5785 Far Hills Avenue

Dayton, Ohio 45429

Defendants.

# I. INTRODUCTORY INFORMATION

In courts of Law, the majority of judges and magistrates quickly and arrogantly tell Pro Se Litigants to hire a lawyer without any consideration of their economic status. Recently, Plaintiff had extreme difficulties in obtaining administrative, competent, truthful, and timely legal representation, involving legal matters in courts of law and has paid over $15,500.00 in no avail, including this case.

Pursuant to Exhibit A, Plaintiff has hereby representing herself in this legal matter and others in Propria Persona and Sui Juris as a Pro Se Litigant. Therefore, Plaintiff requests this court to review Exhibit A before and during trials and adhere to the delineated Constitutional Law, Rule of law and Case Law precedence therein, whereas Plaintiff is a Pro Se Litigant and is not a lawyer.

Pro Se Litigant Dunina submits "The Right to Pro Se Litigate" as Plaintiff's Exhibit 1. It was pointed out in said Exhibit: "for forced by economic necessity to proceed on a Pro Se basis, the challenges of unfamiliar procedure have traditionally been formidable.

1. Firstly ,I ask this Court to respect my right to litigate this case as a Pro Se Litigant and that the right of self representation as a pro Se Litigant has been well protected since this nation founding.

2. I further ask this Court, during these proceedings, to consider the fact that the Judiciary Act of 1780, signed into the Law by president George Washington, that was enactment of the bill of Right provided that "in all courts of the United States. The parties may plead and manage their own cause personally".

3. In addition, I asked this court to recognize that in almost all states of the United States to Pro Se Litigate in both civil and criminal cases are either protected by statute or by state constitution.

4. I further ask this Court to consider that the United States Supreme Court has even held that the right of self-representation to be constitutional guaranteed.

5. I am one of those individuals forced by economic necessity to proceed on a Pro Se basis. The challenges of unfamiliar procedures are formidable for me as a lay person.

6. However, the United States Supreme Court has recognized this fact and has held that the pleadings of Pro Se Litigants **must be liberally construed.**

7. Also, state appelate courts have emphasized the duty of the court, both at trial and upon appeal, to assist **Pro Se Litigant procedurally.**
Therefore, I ask this honorable court to implement the "liberally construed" and "procedurally assist" case law precedents toward me through out the litigation of these proceedings.

MY qualifications, as plaintiff in this case are: I was born and predominantly educated in Communist Russia. I received my BS as an RN in 1971, and in 1974 I received my MS and PhD in Medicine as a combined degree in Family medicine, neurology and Scientific Medical Research and worked 18 years total as a medical doctor/nurse practitioner/ in Moscow, Russia. See Exhibit 2.

Looking for Justice and Freedom, my three children and I arrived in New York as Russian Refugees. The Plaintiff would appreciate the honorable Court's approval of a Russian interpreter for her at trial since English is her second language learned when she immigrated as a Russian refugee. I am presently working as a RN to provide for me family, studying English and American medical issues in order to pass American medical examinations to become an American Licensed Medical Doctor and /or Nurse practitioner.

I Also ask the Court to distinguish between interpretation (listening and speaking) and translation (reading and writing) a language. The Plaintiff is proficient at translation of English, but she needs a Russian interpreter at trial in Court due to unfamiliar terminology and procedures in terms of listening and speaking in English.

## II. Preliminary Statement

1. This is an action brought on behalf of a RN who was resourced by "Maxim" nursing agency to work night shifts at Sycamore Hospital facility under the supervision of Life Care of Dayton.
Sycamore Hospital is owned and operated by Kettering medical network and Life Care Hospitals of Dayton rents space to provide medical service from Sycamore Hospital of Kettering Medical Network.

2. The Plaintiff seeks damages from Defendants for falsely and wrongfully being charged and fired for stealing two Morphine 4 mg. tubexes (theft of drugs) while on duty as an RN for Life Care Hospitals of Dayton and defendants knowing that they did not have one scintilla of evidence to support their claim against the Plaintiff.
The Plaintiff seeks Damages for tort from Defendants for their failure to act in good faith, for the denial of Due Process and Equal Protection and rehiring Plaintiff.

3. The Plaintiff seeks restitution from Defendants for the amounts of money of that they should have paid her if not fired wrongfully and, finally, for attorney fees to prove her innocence. The Plaintiff seeks Damage for the intentional and /or negligent infliction of

emotional distress and the related injuries because of the Defendant's tortues acts, knowingly, willfully, wrongfully, intentionally, insidiously, and invidiously, bestowed upon Plaintiff without just cause.

## III. Parties

1..Plaintiff Olga Dumina was born and predominantly educated in commits Russia. She received her BS as a RN in 1971, and started to work as a RN in clinical hospital #6, Kazan, and Russia. She continued her education and in 1974 she graduated, and received MS and PhD in medicine as a combined degree in Family medicine, Neurology, and Scientific Research. Plaintiff worked total 18 years as a medical doctor/nurse practitioner/ in Largest Clinical Hospitals and Scientific Research Medical Institutions of Moscow, Russia.
Looking for Justice and Freedom, her three children and she arrived in New York as Russian immigrant refugees. Plaintiff retook her RN education in English at Sinclair Community College, and in 1999 graduated, and was licensed as RN in Ohio. Thereafter, as a sole provider for the family, she worked as an RN for various resource agencies, including "Maxim" nursing agency, who sent her in different hospitals to work, one of them was Life Care Hospitals of Dayton, who leased space at Sycamore Hospital of Kettering Medical Network. Plaintiff was accused falsely of stealing medical drugs as a RN at Life care Hospitals of Dayton on November 16, 2002 at 3 a.m.

2.Defendant Elizabeth Carico employed by Life Care Hospitals of Dayton as an RN and accessed the Morphine two shifts later, (more than 17 hours after Plaintiff) in acute facility at 08:11 PM on November 16, 2002 in the med. dispense machine.

3.Defendant Briana Brown employed by Life Care Hospitals of Dayton, RPh, who did not control narcotics in her department every shift, and did not investigate properly the theft of drugs, and reported the disappearance of two Morphine 4-mg. tubexes.

4.Defendant Bill Urshell, employed by Life care Hospitals of Dayton as Director of Nursing, who could have helped to restore the justice and re-instate Plaintiff after she was cleared of theft of drugs.

5.Defendant Pam Hollinger, employed by Life Care Hospitals of Dayton in Human Resources who could have helped to re-instate Plaintiff after she was cleared of theft of drugs.

6.Defendant Carolyn Kendell, employed by Life Care Hospitals of Dayton as manager of Life Care, who did not control narcotics as it supposed to be in her department (every shift), who did not investigate in the proper way the theft of drugs, and who could have re-employ Plaintiff after she was cleared of theft of drugs.

7.Defendant Ken D'Omico, employed by Life Care as CEO, and who could have exhibit

leadership, and correct improper control of counting of drugs in Life care, and improper investigation of theft of drugs, and to re-instate Plaintiff after she was cleared of drug theft.

8. Defendant Bob Burdick is M.S., RPh. Compliance specialist for the Ohio State Board of Pharmacy, Compliance Administrator who investigated the theft of drug charge against Plaintiff. Who ignored the presumption of innocence of Plaintiff, publicly accused her of being a drug user, and publicly threatened to "throw" her in jail, and take away her nursing license. And who could have taken actions to re-instate plaintiff after she was cleared of theft of drugs.See Exhibit 3.

9. Defendant Ohio State Board of Pharmacy employed said Defendant Bob Burdick and is liable for his actions of negligence to help to reinstate Plaintiff after she was cleared of theft of drugs.

10. Defendant Life Care Hospitals of Dayton is the employer of the named various Life Care employees who participated in the setting up of Plaintiff as a suspect of drug theft and who could have re-instated Plaintiff after she was cleared of charges of drug theft.

11. Defendant Aaron Zofkie employed as account manager for "Maxim", who was the resourcing agent and who placed Plaintiff at the Life Care Hospitals of Dayton. Defendant did not use any of his influence and power to provide Due Process and Equal Protection for plaintiff during the drug theft investigation or after to get Plaintiff re-instated.

12. Defendant "Maxim" was the resourcing agency to the Life care Hospitals of Dayton, who resourced the Plaintiff. they did not provide the Plaintiff with any legal representation as her agent and did not attempt to get her re-instated at Life care after she was cleared of drug theft.

13. Defendant Kettering Medical Network provide leased space at Sycamore hospital of Dayton to life care and is liable for permitting Life Care Hospital to operate in violation of Due Process and Equal Protection of Plaintiff's rights on and about their premise.

14. Defendant John Rion was plaintiff attorney in said charge of theft of drugs of November 2002, but he was negligent in getting Plaintiff re-instated after she was cleared by the Ohio State Board of Pharmacy on December 11, 2002. See Exhibit 4.

15 Defendant Richard W. Shulte is an attorney who was referred to Plaintiff by Attorney Rion for her representation in re-instatement, and who stated to Plaintiff that he would represent her under contingency bases to obtain Due Process and Equal Protection civilly

to make her whole again. However, two weeks later, he sent her a letter voiding his oral contract. Leaving plaintiff without any hope of being rightfully re-instated at Life Care of Dayton as a matter of Due process and equal protection of law. No reason was given for the denial of pursuing this case for remedy sought of damages and re-instatement of plaintiff as an employee of Life Care Hospital of Dayton via Maxim resourcing agency. See Exhibits 5 and 6.

## IV. CAUSE FOR ACTION

The plaintiff has been damaged by defendants summarily and individually for false and wrongfully firing of her December 2002 after 6 months of employment and charging her on December 3, 2002 for stealing two morphine 4 mg tubexes(theft of drugs) while on duty as an RN resourced by Maxim Agency to Life Care Hospital of Dayton, housed at Sycamore Hospital of Kettering Medical Network. See Exhibit 3.

2. Defendants injured plaintiff, because they did not find one scintilla of evidence to support their claim of firing and charging plaintiff with theft of drugs. As a consequence, the defendants damaged plaintiff professionally, economically, psychologically, emotionally, and physically from November 18th, 2002 to this date of filing this action and perpetual.

3. The defendant(s) injured plaintiff by their failure to put forth effort to reinstate plaintiff without a just cause to support their claim not too and exhibited negligence of re-instatement after plaintiff was cleared by lie detector test of December 5th, 2002 and Ohio state board of pharmacy closure of its investigation on December 11th, 2002. See Exhibits 3 and 4 as evident of these facts, thereby denying plaintiff due process and equal protection.

4. Defendants in concert damaged plaintiff by intentional and negligently infliction of emotional distress and economic deprivation upon her by tortuous acts knowingly, willfully, wrongfully, intentionally, insidiously and invidiously visted upon plaintiff without just cause.