IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| OLGA DUNINA, | Case No. 3:07-cv-014 |
| Plaintiff, | |
| | Chief Magistrate Judge: Michael R. Merz |
| v. | |
| CIRRUS CONCEPT CONSULTING, INC. | **AFFIDAVIT OF LESLIE KAHN** |
| Defendant. | |

STATE OF OHIO         )
                      ) SS:
COUNTY OF MONTGOMERY  )

I, Leslie Kahn, being first duly cautioned and sworn, and being competent to testify as to the matters contained herein based upon my personal knowledge, depose and state:

1. I am president of Cirrus Concept Consulting, Inc. I have been a registered nurse for thirteen years, and have been in the business of medical staffing for seven years.

2. Cirrus is a professional employer organization ("PEO") which specializes in providing staffing to the health care industry in the Dayton, Ohio area. Our primary client base consists of Dayton area hospitals and their affiliates. Cirrus recruits candidates for placement with these clients.

3. Cirrus and its affiliate provide clients various staffing alternatives including permanent placement, temporary placement, temp-to-hire placement, and contract placement through employee leasing. As a PEO, Cirrus does not operate any medical facilities, but only provides staffing services.

4. Regardless of the type of placement, all placements are subject to client approval. A client has discretion to reject a candidate, and is not required to give Cirrus a reason. Cirrus is in a highly competitive business. Cirrus cannot require or force any client to accept a referral from Cirrus or provide that candidate a job. Cirrus never has sent a candidate to work for a client against that client's wishes. Clients often work with more than one PEO to meet their staffing needs. A client can seek referrals from competitors of Cirrus if it is not satisfied with the candidates referred by Cirrus.



EXHIBIT 3

5. Olga Dunina applied to Cirrus for placement in a position as a registered nurse. While I was concerned about placing her because of her attitude and demeanor, Cirrus nonetheless attempted to place her with our clients just as it does for other candidates. Cirrus would have placed Ms. Dunina with one of Cirrus' clients had they been willing to accept her. Cirrus did not make any less effort to place Ms. Dunina than Cirrus did to place other nurse candidates at that time. Despite these efforts, Cirrus was unsuccessful in placing Ms. Dunina at any of its clients. As a result, Cirrus did not have a position for Ms. Dunina, and I advised her of that fact.

6. The fact that Cirrus did not place Ms. Dunina with one of its clients had nothing to do with her national origin or age, and was not in retaliation for any actions that might have been taken by Ms. Dunina. The only reason that Cirrus did not place Ms. Dunina was because it was not able to successfully refer her to any of its clients.

7. Cirrus' clients gave various reasons for not desiring to employ Ms. Dunina. One of Cirrus' largest clients, the Kettering Medical Network, advised Cirrus that Ms. Dunina was on its "Do Not Return List", making her ineligible for placement anywhere within that hospital network.

8. Cirrus successfully places candidates of many different ages and national origins. None of Cirrus' clients have ever suggested that Ms. Dunina's national origin or age were factors in the decision not to accept her. Likewise, none of Cirrus' clients have ever suggested that they did not desire to accept Ms. Dunina because she had previously claimed discrimination. As of today, I still do not know of any facts suggesting that Cirrus' clients were discriminating against Ms. Dunina because of her age or national origin, or that they were retaliating against her for any reason. To the best of my knowledge, all of Cirrus' clients were acting for non-discriminatory and non-retaliatory business reasons.

9. At the time that Cirrus was attempting to place Ms. Dunina as a nurse with its clients, I was not aware that she had a record of morphine theft while working at a Kettering Medical Center Network facility. Ms. Dunina did not disclose this to Cirrus on her resume or during the application process, and it was not mentioned to Cirrus by any of its clients at the time.

10. Based upon my extensive experience and expertise in medical staffing, a nurse with a record of on-the-job morphine theft would be very difficult if not impossible to place in any medical facility that is aware of that record. To the best of my knowledge, Cirrus has never hired or placed a nurse with a record of morphine theft. I would be reluctant to refer such a nurse to a client because of the associated health and liability concerns, and would certainly never intentionally refer such a nurse without disclosing the morphine theft record to my client. I believe that Ms. Dunina jeopardized the business and reputation of Cirrus by failing to disclose this information to me.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Leslie Kahn

Sworn to and subscribed before me, a Notary Public in and for the State of Ohio, by the above named Leslie Kahn, this 6th day of August, 2007.

_____
Notary Public

CONSTANCE JO FIEDLER, Notary Public
In and for the State of Ohio
My Commission Expires June 3, 2012

- 3 -